**Affirmed and Memorandum Opinion filed August 27, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00473-CR

---

### JIMMY EARL VAN-CLEAVE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Cause No. 9403197**

---

## M E M O R A N D U M   O P I N I O N

Appellant, Jimmy Earl Van-Cleave, appeals the trial court's sentence of life in prison on appellant's conviction for aggravated kidnapping. In two issues, appellant argues that the trial court erred in admitting appellant's prison disciplinary records containing evidence of extraneous offenses. We affirm.

### I. BACKGROUND

On July 20, 1994, appellant was convicted of aggravated kidnapping and

sentenced to life in prison. Appellant was granted habeas corpus relief as to punishment only on the ground that he received ineffective assistance of counsel because there was no offer of mitigating evidence during the punishment phase. *See Ex Parte Van-Cleave*, No. AP-77012, 2013 WL 2112369, at *1 (Tex. Crim. App. May 15, 2013) (not designated for publication).

At the outset of his second punishment hearing, appellant pleaded "true" to an enhancement paragraph alleging a prior conviction for sexual assault. During the hearing, the State presented evidence describing the present offense and proving that appellant was on parole for the sexual-assault conviction when he committed the present offense. Appellant presented mitigating testimony revealing a difficult upbringing and testimony from two witnesses—prison guard, Antonio Gallardo, and correctional consultant, Frank AuBuchon. Gallardo testified regarding supervising appellant working in prison. AuBuchon testified about appellant's behavior during his incarceration; according to AuBuchon, appellant misbehaved and had disciplinary issues initially but later demonstrated good conduct in prison. At the close of evidence, the State offered appellant's prison disciplinary records containing descriptions of numerous infractions early in his incarceration. The trial court overruled appellant's objection and admitted the records.

In closing argument, the State did not dispute that appellant displayed an ability "to clean up his act" while incarcerated, but argued that he was not capable of behaving appropriately in the "free world." The State emphasized that appellant had been on parole for only seven months when he committed the present offense.

The record reflects that, before deciding appellant's sentence, the trial court took a brief recess stating it would review appellant's prison disciplinary records which had just been admitted. The trial court did not mention appellant's disciplinary records when orally pronouncing the life sentence. The trial court stated that, but for

appellant's "absolutely horrific and tragic" childhood, he may have developed very differently, but the court could not ignore "the extreme violence" and his "criminal background."

## II. ANALYSIS

Appellant presents two numbered issues but argues that the trial court erred by admitting appellant's prison disciplinary records for three reasons: (1) the extraneous offenses contained therein were not proven beyond a reasonable doubt; (2) the descriptions of the offenses were testimonial in nature, such that their admission violated appellant's Sixth Amendment right to confrontation; and (3) the State failed to provide proper notice of its intent to use the records.

## A.    Reasonable-Doubt Argument

In one portion of his first issue, appellant argues that the extraneous offenses contained in the disciplinary records never could be proven beyond a reasonable doubt because the preponderance-of-the-evidence standard applied when determining whether there was a disciplinary infraction.

We review a trial court's admission of evidence under the abuse-of-discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). A trial court abuses its discretion when its decision "lies outside the zone of reasonable disagreement." *Murchison v. State*, 93 S.W.2d 239, 249 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.3d 372, 391 (Tex. Crim. App. 1990)).

Texas Code of Criminal Procedure article 37.07 provides:

[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and

3

405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible.

Tex. Code Crim. Proc. Ann. art. 37.07, §3(a) (West, Westlaw through 2015 R.S.).

During the punishment phase, extraneous-offense evidence may be offered for any relevant purpose where the "State can offer proof that would allow a reasonable fact-finder to conclude, beyond a reasonable doubt, that the defendant could be held criminally responsible for that act." *Delgado v. State*, 235 S.W.3d 244, 252 (Tex. Crim. App. 2007); *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999) (requiring the fact-finder may not consider extraneous-offense evidence unless it is satisfied beyond a reasonable doubt that the prior acts are "attributable to the defendant.")

The fact-finder in this case was the trial court. To admit the extraneous-offense evidence, the trial court must believe beyond a reasonable doubt that the appellant "could be held criminally responsible" for the offenses contained in the prison disciplinary records. *See Delgado*, 235 S.W.3d at 252. The fact that, for prison disciplinary purposes, the preponderance-of-the-evidence standard applies would not necessarily preclude the fact-finder in this case from deciding the reasonable-doubt standard was also satisfied. "A judge in a bench trial is presumed to have applied the correct law to the facts." *Coonradt v. State*, 846 S.W.2d 874, 876 (Tex. App.— Houston [14th Dist.] 1992, pet. ref'd); *see also Fields*, 1 S.W.3d at 688 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 91 (1986) ("[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all.")).

We hold that the trial court correctly applied the law and could have concluded beyond a reasonable doubt that appellant committed the offenses contained in the

4

prison disciplinary reports because it had before it the contents of the records and AuBuchon's testimony corroborating some of the incidents in the reports confirming appellant was not a model prisoner early in his term. *See Coonradt*, 846 S.W.2d at 876. Additionally, error in the admission of the prison disciplinary reports would be harmless for the reasons set forth in Section B. *See Martinez v. State*, 313 S.W.3d 358, 369 (Tex. App.—San Antonio 2009, pet. ref'd) (concluding that the omission of a reasonable-doubt instruction in a jury charge regarding unadjudicated offenses was not harmful error when the entirety of the evidence is reviewed).

**B.     Contention Regarding Confrontation Clause**

In another portion of his first issue, appellant contends that the disciplinary reports contain testimonial statements and thus their admission violated his Sixth Amendment right to confront witnesses. *See* U.S. Const. art. VI. The Confrontation Clause of the Sixth Amendment bars the admission of a non-testifying witness's testimonial statements, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *See Smith v. State*, 420 S.W.3d 207, 223 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). A statement is generally considered "testimonial" if it is a solemn declaration made for the purpose of establishing some fact. *Id.* (citing *Crawford*, 541 U.S. at 51). We review *de novo* a determination of whether a statement is testimonial because such a legal ruling is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. *See Lilly v. Virginia*, 527 U.S. 116, 137 (1999); *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006).

5

The disciplinary records contain the following descriptions of offenses:

On the date and time listed above, and at 12 Bldg. B Pod 63 Cell, [appellant] did assault [another inmate] without a weapon, by spitting on him. Moreover, the assault did not result in any injuries.

On the date and time listed above, and at Z-wing 1-row, [appellant] did expose his penis to [Officer] with intent to arouse the sexual desire of himself.

On the date and time listed above, and at cell Z-122, [appellant] did intentionally damage the food slot door on his cell front door, by banging the door numerous times until it broke off the hinges said property belonging to [The State].

On the date and time above, and at H-119, [appellant] did possess contraband, namely 2 pair of shorts, which is in excess of the amount authorized, such amount being 1 pair of shorts.

On the date and time above, and at cell M-210, [appellant] did possess a weapon intended to be used to injure another person, namely two 6 inch toothbrush handles with razor blades melted into the end.

On the date and time above, and at bldg hallway, [appellant] did engage in a fight without a weapon with [another inmate]. [Appellant] was ordered by [Officer] to stop fighting and face the wall and [appellant] failed to obey the order.

On the date and time above, and at a-turnout door, [appellant] refused to turn out for his work assignment without a legitimate reason.

The Court of Criminal Appeals has held that a defendant's jail records, introduced at the punishment phase of trial, "chronicling the defendant's violation of jail rules, cell transfers, and fighting, is not inadmissible hearsay; rather, the jail records qualify as records made in the regular course of business." *Jackson v. State*, 822 S.W.2d 18, 30–31 (Tex. Crim. App. 1990) (en banc); *see* Tex. R. Evid. 803(6). Evidence that falls within a firmly rooted exception to the hearsay rule does not violate the Confrontation Clause, and the business-records exception provides such a foundation. *See Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005). However, the disciplinary reports should not contain testimonial statements, unless

the strictures of the Confrontation Clause have been satisfied. *Id*. at 881. Otherwise, such testimonial statements amount to the very type of evidence the Confrontation Clause intended to prohibit: "unsworn, ex parte affidavits of government employees." *Id*. The *Russeau* court ruled that the trial court erred in admitting the defendant's disciplinary records containing inadmissible testimonial statements because the Confrontation Clause's requirements had not been met. *Id*. at 880. In *Russeau*, the defendant's disciplinary offenses included "threatening physical harm and even death to others, refusing to work or cooperate, breaking out of his cell at night, exposing himself and masturbating in front of jailers and other inmates, verbally abusing jailers and other inmates, fighting with other inmates, and possessing contraband, including improvised weapons." *Id*. In concluding that the disciplinary report contained inadmissible testimonial hearsay, the *Russeau* court found particularly persuasive "the detailed and graphic" nature of the report that recounted appellant's numerous offenses. *Id*.

In contrast, our court's review of a similar situation involving testimonial hearsay and prison disciplinary records found that a sterile recitation of the defendant's offenses and the punishments received contained no testimonial content and thus did not violate the Confrontation Clause. *See Ford v. State*, 179 S.W.3d 203, 209 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). The accounts considered in *Ford* were the following:

> February 5th, 2004, the defendant was charged fighting. Seven days loss of privileges, found guilty, October 15, 2003, extortion. June the 11th, 2003, extortion, ten days loss of privileges. April the 21st, 2003, assault on an inmate. April 21st, 2003, horseplaying, altercation, five days' loss of privileges. February the 24th, 1998, 25 days loss of privileges for fighting. February the 18th, 1998, fighting. February the 18th, 1998, fighting. And again February the 18th, 1998, fighting.

*Id*. at 208.

7

In a subsequent case, our court contrasted *Ford* with *Russeau* to further delineate between testimonial and non-testimonial statements. *See Grant v. State*, 218 S.W.3d 225, 231 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Relying on *Ford*, our court explained that the "presence or absence of a subjective narration of events related to [the defendant's] guilt or innocence" establishes the difference between testimonial and non-testimonial statements:

> [I]n *Ford*, we conceptualized the difference . . . as dependent in part on the extent to which the statements are a sterile recitation of facts or a subjective narration of events related to appellant's guilt or innocence. In *Ford*, the statements in the disciplinary reports were objective statements that particular punishments were assessed for the identified disciplinary infractions by the appellant; they were not narratives by witnesses against the appellant relating to his guilt or innocence of the infractions described. Consequently, the statements were non-testimonial. In contrast, the statements in *Russeau* contained subjective narrations of the very actions by the appellant that constituted the offenses for which he is punished. Thus, the presence of a subjective narration of events related to the appellant's guilt or innocence is a significant difference between the statements at issue in *Russeau* and *Ford*.

*Id*.

The Court of Criminal Appeals has adopted this rationale for delineation of testimonial versus non-testimonial nature of records in similar circumstances. *See Smith v. State*, 297 S.W.3d 260, 277 (Tex. Crim. App. 2009). The *Smith* court held that "boilerplate" language which does not contain any such testimonial statements, narratives of specific events, or written observations is admissible. *Id*. at 276; *see also Segundo v. State*, 270 S.W. 3d. 79, 108–07 (Tex. Crim. App. 2009). Likewise, the First Court of Appeals has held the following language went beyond "boilerplate" language and contained subjective observations from non-testifying witnesses:

> . . . was disrupting in Ms. Richmond's class. He was sent out to security. Youth refused to go. Student was counseled by staff and refused to comply. Mr. Henderson tried counseling with . . . [Youth]. He refused

all counseling. Youth then moved away from staff trying to run. I grabbed . . . [Youth] to place him in a standing PRT. . . . balled his fists up and swung at staff. Mr. Henderson took . . . [Youth] and placed him into a part. At this time Mr. Spearman . . . came to assist. I then went down and secured his legs.

*Smith*, 420 S.W.3d at 225.

While some of the incident reports in the present case align closely with *Ford*'s sterile model, we conclude that three reports include testimonial descriptive phrases and brief narrative accounts resembling those found in *Smith*. *See id*. Specifically, the three disciplinary reports we conclude were testimonial in nature are the following descriptions: (1) fighting with another inmate enters into a narrative track when it states that "[appellant] was ordered by Lt. T. Brown to stop fighting and face the wall" and included that "said inmate failed to obey the order"; (2) appellant's exposure of himself adds that the act was committed "with intent to arouse the sexual desire of himself"; and (3) possession of weapons describes them as "two 6 inch toothbrush handles with razor blades melted into the end" which were "intended to be used to injure another." We conclude the reports contain testimonial statements regarding appellant's conduct. *See Smith*, 297 S.W.3d at 276–77.

The extraneous phrases in the written observations that make it more probable that the appellant was guilty of the offense charged are testimonial in nature. *See id*. We determine that the detail used to describe appellant's guilt of the extraneous offenses is testimonial hearsay and is inadmissible without appellant's prior opportunity to cross-examine the pertinent witness or a showing that the witness was unavailable. *See id*. Thus, we hold that the trial court erred in admitting three of appellant's disciplinary reports which included testimonial hearsay.

Having found constitutional error as to the three offenses described, we "must reverse [the] punishment unless [we] determine beyond a reasonable doubt that the error did not contribute to the. . . punishment." Tex. R. App. P. 44.2(a); *see also*

*Smith*, 297 S.W.3d at 277 *(citing Chapman v. California*, 386 U.S. 18, 24 (1967)). We hold that beyond a reasonable doubt the admission of appellant's disciplinary records did not contribute to his punishment.

The State did not reference appellant's prison disciplinary infractions during its closing argument. Rather, the State emphasized the callous nature of the present offense, noting that appellant reoffended after only seven months' parole and within hours of receiving a five-hour pass from the halfway house in which he was living.

Furthermore, the trial court made no reference to appellant's prison conduct in pronouncing his sentence. The records were admitted at the close of evidence, and the trial court then stated it would review the records during a brief recess. When announcing appellant's sentence, the trial court made no mention of the prison disciplinary reports. The trial court expressed only that "at the end of the day, though, the Court cannot ignore the extreme violence and your criminal background," and it took into account appellant's plea of true on the enhancement paragraph and found it to be true.

The record supports that the trial court would have assessed a life sentence irrespective of the disciplinary infractions, based on the extremely violent facts of the present offense, committed while appellant was on parole for sexual assault. After seven months' parole for sexual assault and within hours of getting his first five-hour pass from the halfway house in which he was living, appellant drove to Galveston in a truck he had just received from his father. Appellant met various women and went to multiple bars while in Galveston. After leaving Galveston around midnight, appellant noticed complainant, who was driving alone in her car. Appellant decided to rob her, take her car, and, perhaps, "get some pussy, too." Appellant followed the complainant on the highway and caused an automobile accident between his truck and complainant's car. Complainant called her husband, a police officer, who

10

instructed her to take note of the truck's license plate number. Appellant asked complainant if she was injured, and he appeared to have a nice demeanor until he saw that she was on the phone. Complainant exited her car to obtain appellant's license plate number. Appellant put both hands around the complainant's neck and tried to strangle her. Complainant was unable to breathe for a short time and lost consciousness after being thrown to the ground.

Complainant regained consciousness on the floorboard of appellant's truck; appellant told her she was not "going anywhere, bitch." Complainant attempted to grab the steering wheel in an attempt to have appellant stop the vehicle enough that she could exit it as she opened the door. Appellant pushed her away, reaching over with his left hand to close the door. Complainant grabbed hold of his hand and bit off part of his "pinkie" finger, spitting it on the floorboard of the truck.

When complainant's husband arrived at the scene, he noticed his wife's car being driven by one male, and he found that suspicious. Complainant's husband was in a Houston Police Department patrol car. He turned on his lights and siren attempting to stop appellant's truck. Appellant rammed the police vehicle and would not stop. Complainant then rolled out of the truck. Appellant circled back and deliberately ran over her leg. Complainant's husband's patrol car collided with the truck, causing it to stop after appellant tried to ram the patrol car a third time. Complainant's husband exited his patrol car and ordered appellant to show his hands, at which time appellant abandoned his truck and ran for cover. He was apprehended the following day after attempting to avoid a police search.

In light of the evidence of appellant's criminal background, to which he pleaded "true," the facts of the present offense, and the trial court's comments, we conclude beyond a reasonable doubt that the trial court's admission of the

11

disciplinary records did not contribute to appellant's punishment. *See* Tex. R. App. P. 44.2(a); *Smith*, 297 S.W.3d at 277. We overrule appellant's first issue.

## C. Contention Regarding Defective Notice

In his second issue, appellant contends that the trial court erred in admitting the disciplinary records because the State failed to provide proper notice of its intent to use extraneous offense. Appellant asserts the State's notice reflected that every prison disciplinary offense occurred in Walker County, a county in which appellant argues he was never incarcerated. Although appellant lists this assertion as an issue at the outset of his brief, he cites no authority or record references to support this assertion. An appellant's brief must contain "argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Failure to properly brief an issue presents nothing for us to review; we are not required to make appellant's arguments for him. *See Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) (citing *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)). Accordingly, we overrule appellant's second issue.

We affirm the trial court's judgment.


/s/    John Donovan
       Justice


Panel consists of Justices Boyce, McCally, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).