COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| CARLTON PRIESTER, | § | No. 08-13-00278-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 243rd District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20130D02625) |
| | § | |

**O P I N I O N**

Appellant Carlton Priester was found guilty of the murder of Gerald Banks and sentenced to 35 years in prison. Appellant raises three issues on appeal. He contends: (1) the trial court erred in refusing his attorney's oral request for a continuance made on the morning of trial; (2) the trial court erred in allowing the State to read a witness's grand jury testimony into the record at trial; and (3) the State made an improper jury argument that encouraged the jury to disregard the trial court's instruction on the lesser-included offense of manslaughter. We affirm.

**FACTUAL BACKGROUND**

The victim, Gerald Banks, was assisting his friend, Eric Ezell, with a promotional music event at Shooters Billiards in El Paso, Texas. After the event ended around 3 a.m., witnesses heard several individuals arguing outside the bar. Ezell went outside to try to calm the situation,

but seeing one of the individuals had a gun, Ezell retreated back inside the bar. Ezell identified Appellant as the individual with the gun.

As Ezell was going back inside the bar, he saw Banks leave the bar and heard Banks speaking to Appellant, encouraging him to calm down. A "scuffle" ensued, and Ezell heard Banks and Appellant arguing. Ezell momentarily turned his back to the scene, and immediately heard a gunshot ring out. Turning back, Ezell saw Banks lying on the ground bleeding from his head.[1] Although Ezell did not actually see Appellant shoot Banks, he was certain he saw Appellant arguing with Banks immediately before the shooting, and that Appellant was holding a gun at that time.

Another witness, Ben Glinsey, who was working as "security" at the event, also recalled hearing a commotion outside the bar. He observed an individual pull a gun on two females. At trial, Glinsey identified that individual as Appellant. Glinsey spoke to Appellant briefly, asking him to "walk it off." Glinsey recalled that Appellant became upset and pushed him, and then showed him the "butt of the gun," causing Glinsey to back away. Glinsey subsequently observed Banks speaking with Appellant, and heard Appellant say: "You're the guy I was looking for." Glinsey then began attempting to get others in the crowd back inside the bar, and he then went inside the bar himself, closing the doors behind him for security reasons. Shortly thereafter, Glinsey heard a gunshot, but like Ezell he did not actually witness the shooting.

At trial, another witness called by the State, Charles Bertram, recalled being at the scene of the shooting, but claimed he could not recall the events in question. Over Appellant's objection, the trial court allowed the State to read Bertram's grand jury testimony into the record, in which

---

[1] Ezell believed Appellant "pistol-whipped" Banks on the head during the argument.

Bertram testified he had seen Appellant with a gun outside the bar, both before and after the shooting, and that he and Appellant had fled the scene in a car driven by Dantrell Posey.

The police were called to the scene, and interviewed several individuals that same morning, most of whom they described as being "very uncooperative." However, several witnesses advised police that the shooter's nickname was "CJ," and that he was from the Chicago area. Upon learning that the shooter had left the scene in a car being driven by Posey, the police ran a background search on Posey and discovered that an individual named "Charles Jones" from Illinois had been in a vehicle on a prior occasion when Posey had been pulled over by police during an unrelated routine traffic stop.

Based on that information, the police included a photograph of Charles Jones, as well as a photograph of Posey, in two separate photo lineups that were shown to both Ezell and Glinsey within days after the shooting. Both witnesses identified Posey as being involved in the incident. Glinsey identified Jones as the shooter, while Ezell stated that Jones resembled the shooter. Although Jones was initially arrested for Banks' murder, he was subsequently released when police learned he was in Chicago at the time of the shooting.

In the interim, police began to suspect that Appellant, who was also from the Chicago area and also went by the nickname "CJ," was the shooter. They conducted two new photo lineups in which Appellant's photograph was included. During those two lineups, both Ezell and Glinsey positively identified Appellant as the individual they had seen with a gun on the morning of the shooting.

The police also obtained palm prints and fingerprints from the outside of Posey's vehicle that matched Appellant's prints, and found blood samples inside Posey's vehicle that matched

3

Banks' DNA. The police also found a receipt from Western Union in Posey's car that indicated Appellant had wired money to a Shalice Brown in Dallas, Texas before the shooting. The police were eventually able to locate and arrest Appellant at Brown's apartment in Dallas.

During trial, the jury was shown a videotape of the events from the morning of the shooting that had been captured by a surveillance camera at a neighboring business. The videotape was played at various times during the trial, and at least one witness, El Paso Police Officer John Armendariz, testified that he was able to identify Appellant as the individual "displaying" a gun during the incident outside the bar, based on his viewing of the videotape. Officer Armendariz also testified he observed Appellant on the videotape confronting Banks outside the bar shortly before the shooting, and that he observed Appellant run toward Posey's car after the shooting, appearing to touch the outside of the car before getting inside, in the same location where Appellant's prints were later found.

The medical examiner who performed the autopsy on Banks' body testified that Banks suffered a blunt force trauma to his head, causing a laceration, which was consistent with a "pistol whipping." The medical examiner further testified that Banks had died from a contact gunshot wound through his chest that perforated his heart and liver. According to the medical examiner, the gun was in "close contact with the skin," and pushed up against Banks' body when it was fired, making it consistent with the theory that the firearm had discharged during a struggle.

The jury found Appellant guilty of murder as charged in the indictment. Prior to the hearing on punishment, Appellant agreed to waive the hearing and accept a 35-year prison term. After ensuring that Appellant knowingly waived his right to a formal punishment hearing, the trial court accepted the agreement and entered judgment sentencing Appellant to a 35-year prison term.

4

**DISCUSSION**

**Whether the Trial Court Improperly Denied the Oral Request for a Continuance**

In his first issue, Appellant contends that the trial court abused its discretion in denying his attorneys' oral motion for a continuance made on the first morning of trial. Appellant asserts he was prejudiced by his attorneys' inability to adequately prepare for trial.

*Background*

Appellant's first attorney was appointed to represent him on May 23, 2012, shortly after his arrest on May 18, 2012. Appellant's second attorney was appointed as co-counsel in July 2012. Appellant was initially indicted in June 2012 for Banks' murder, and was later re-indicted for the same murder in May 2013 under a new cause number. Appellant was represented by the same two attorneys throughout both proceedings.

Appellant's case was initially set for trial on February 22, 2013, under the original cause number. For reasons not clear from the record, the trial was reset on at least two occasions, first to April 19, 2013, and later to June 14, 2013. Appellant's case was then set for trial on August 2, 2013, under the new cause number, but was continued twice at Appellant's request, first to August 9, 2013, and later to August 16, 2013. In Appellant's written motions seeking those two continuances, his attorneys represented they had conflicts in other courts in cases that were set for trial during those same time periods.

On Friday, August 16, 2013, the first day of trial, Appellant's defense counsel orally advised the trial court that they had been in trial in another state court murder case until 5 p.m. on Wednesday of that week, that things had been "hectic," and that both attorneys were "tired." The attorneys asserted that the other murder trial had required their full attention and that consequently

5

they did not have time to properly prepare for Appellant's case. Appellant's attorneys did not specify exactly what preparation they believed remained to be completed, except to state that they still needed to "get the witnesses down here" from Chicago. Counsel did not identify the witnesses at that time, but later advised the court they were seeking travel funds to have two individuals flown from the Chicago area, to be utilized as character witnesses during the punishment phase of the trial.[2]

The trial court denied the motion for a continuance, noting that Appellant had already received two prior continuances. The trial court further pointed out that a continuance would have caused harm to Posey, who had been in jail since the time of his arrest for his role in the incident, indicating that Posey's case could not be resolved until after Appellant's case went to trial.

### The Parties' Arguments

On appeal, Appellant correctly points out that we review a trial court's decision denying a motion for a continuance for an abuse of discretion. *Gallo v. State,* 239 S.W.3d 757, 764 (Tex.Crim.App. 2007). Appellant also correctly points out that to show reversible error he must demonstrate that denying the motion harmed him. *Gonzales v. State,* 304 S.W.3d 838, 843 (Tex.Crim.App. 2010).

Appellant, however, fails to address exactly how the trial court's decision to deny his motion for continuance was erroneous under the particular circumstances of this case. Instead,

---

[2] Appellant filed a separate written motion the day before trial, requesting travel funds to fly the two witnesses to El Paso to speak on Appellant's behalf at sentencing, but did not bring that motion to the court's attention until the first morning of trial. Although the trial court advised Appellant that he would take the request for travel funds "under consideration," the record does not indicate that the trial court ruled on the request, and it does not appear that Appellant ever renewed the request. We also note that the record does not reflect whether Appellant's attorneys were able to secure the witnesses' attendance since Appellant ultimately waived his right to a formal punishment hearing. We do note, however, that Appellant still had several days to procure the witnesses' attendance, as jury voir dire began on Friday, August 16, 2013, while the last day of trial was five days later, on Wednesday, August 21, 2013.

6

Appellant delves into a lengthy argument regarding how he was prejudiced by his attorneys' alleged lack of preparation, citing various examples of his attorneys' supposedly deficient conduct at trial, which he contends was so prejudicial that it led to his conviction. In particular, Appellant contends that because his attorneys were given only "one day" to prepare for trial, they were not prepared to conduct an adequate voir dire of the jury, to make certain objections at trial, and to secure the attendance of witnesses at trial.[3]

The State contends that, contrary to the assertions in Appellant's brief, Appellant's attorneys were given far more than one day to prepare for trial, as they had been assigned to Appellant's case for well over a year when the case finally went to trial. The State also points out that Appellant's attorneys had filed multiple motions and discovery requests, requested and received the appointment of an investigator and an expert witness, requested and received $1,214 for travel expenses for out-of-state witnesses, and requested and received an advance of $3,000 in expert witness fees. In addition, Appellant's attorneys submitted claims for legal services to the county auditor's office, requesting reimbursement for over 200 hours each for legal services, most of which involved trial preparation leading up to the August 16, 2013 trial.[4]

*Appellant's Failure to File a Written, Sworn Motion for a Continuance*

---

[3] Appellant does not claim in this appeal that he was denied effective assistance of counsel.

[4] The State also points out that Appellant's attorneys failed to demonstrate that they acted with "diligence" in attempting to prepare for Appellant's trial in their request for a continuance, as required by *Gonzales*. *See* 304 S.W.3d at 843-44 (noting the existence of a "diligence requirement" as a precondition for a motion for continuance based upon the need for additional trial preparation); *see also Smith v. State*, No. 08-11-00167-CR, 2012 WL 5359234, at *6 (Tex.App. – El Paso Oct. 31, 2012, no pet.) (not designated for publication) (trial court could have reasonably rejected appellant's motion for continuance because the motion failed to address the diligence requirement). The State similarly points out that Appellant's attorneys failed to demonstrate that they acted with diligence in attempting to procure the missing witnesses' attendance at trial, as required by the Texas Code of Criminal Procedure, and provided no indication of what steps, if any, they had taken to try to transport the witnesses to El Paso for trial. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.06, 29.07 (West 2006) (requiring a party moving for a continuance based on an absent witness to, among other things, state that the party used diligence in attempting to procure the witness's attendance).

7

We need not resolve whether the trial court abused its discretion in denying Appellant's motion for a continuance or whether the denial caused prejudice to Appellant. We conclude Appellant forfeited his right to raise this issue on appeal because he did not file a written and sworn motion for a continuance.

The Texas Code of Criminal Procedure allows a continuance in a criminal action only upon the filing of a written motion setting forth sufficient cause. TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006). Further, the Code requires that the motion must be sworn to "by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08 (West 2006).

As the Texas Court of Criminal Appeals has repeatedly held, a "motion for continuance not in writing and not sworn preserves nothing for [appellate] review." *Dewberry v. State,* 4 S.W.3d 735, 755-56 (Tex.Crim.App. 1999). The Court recently reaffirmed this ruling in *Blackshear v. State,* 385 S.W.3d 589, 591 (Tex.Crim.App. 2012), in which it concluded that "if a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal." *Id.* at 590-91. Further, in *Blackshear,* the Court specifically rejected a prior line of intermediate appellate court cases that allowed a party to raise a due process claim from a trial court's denial of an oral motion for continuance. *Id.* at 591. In particular, the Court in *Blackshear* held that it was "explicitly refus[ing] to recognize a due process exception to the rule requiring motions for continuances to be written and sworn in order to be preserved on appeal." *Id.* (citing *Anderson v. State,* 301 S.W.3d 276, 280 (Tex.Crim.App. 2009)).

We recently applied the ruling in *Blackshear* in *Lewis v. State*, and held that an appellant had forfeited his right to claim on appeal that the trial court's denial of his oral, unsworn motion for a continuance violated his due process rights, noting that in order "to preserve an appellate

8

challenge to the trial court's denial of a continuance, the motion for continuance must have been written and sworn." *Lewis v. State,* No. 08-12-00151-CR, 2014 WL 644812, at *3 n.2 (Tex.App. – El Paso Feb. 19, 2014, no pet.) (not designated for publication).

Similarly, we conclude in the present case that Appellant forfeited his right to complain about the trial court's denial of his request for a continuance because of the failure to file a written, sworn motion for continuance. We therefore overrule Appellant's first issue.

**Whether the Trial Court Improperly Allowed the State to
Read Charles Bertram's Grand Jury Testimony into the Record**

In his second issue, Appellant contends the trial court abused its discretion by allowing the State to read Charles Bertram's grand jury testimony into evidence at trial. Appellant contends the grand jury testimony was improper hearsay evidence, and that it was not properly admitted as an exception to the hearsay rule, either as a prior inconsistent statement or as a recorded recollection.

*Background*

Less than a month after the shooting, Charles Bertram testified in front of the grand jury that he was present at Shooters Billiards on the morning of the shooting. Although he testified that he was "drunk" that morning and that he had "blacked out" at some point, Bertram was able to provide several details relating to the shooting that were important to the State's case. In particular, Bertram recalled seeing Appellant with a gun during the altercation outside the bar prior to the shooting. Bertram further testified that although he did not actually see Appellant shoot Banks, he observed Appellant holding a gun the "whole time" both before and after the shooting, and that he did not see anyone else with a gun during the incident.

During his appearance before the grand jury, Bertram also positively identified a

9

photograph of Appellant as the individual with the gun, and placed his signature on the photograph. In addition, Bertram testified in front of the grand jury that after the shooting, Appellant got into Posey's car with him, and that Appellant was holding a gun at that time as well. Bertram also told the grand jury that Appellant sat in the front passenger side of Posey's car, where Banks' DNA was later found by police.

Bertram was subpoenaed by the State to testify at Appellant's trial.[5] During his trial testimony, Bertram initially acknowledged that he was at the bar on the morning of the shooting, but repeatedly testified that he did not remember "nothing that happened" that morning, that he was highly intoxicated at the time, that he had "blacked out" at some point that morning, and that he was suffering from "bad memory loss," based in part on his wish to block the shooting from his memory. Bertram did testify at trial that he remembered "parts and bits" of what occurred on the morning of the shooting, and in particular, he recalled seeing an individual with a gun outside the bar prior to the shooting. However, Bertram repeatedly claimed that he could not recall who that individual was. Bertram also recalled he heard a shot fired, and that he then "took off running," getting into a car being driven by Posey. Bertram repeatedly testified, however, that he could not remember who else was in the car with them.

The prosecutor then asked Bertram if he recalled testifying in front of the grand jury the year before regarding the shooting. Bertram responded that he did recall testifying, but claimed he did not remember anything he had told the grand jury. Bertram also acknowledged the

_____

[5] Bertram initially sought to be excused from testifying by invoking his Fifth Amendment right not to incriminate himself. In particular, he argued that because he left the scene of the shooting with Appellant and Posey, he could be considered an "unindicted co-conspirator." Bertram's counsel further pointed out that he had requested a letter of immunity in exchange for his testimony, but the State had refused his request. The State argued that Bertram faced "no criminal culpability" due to his "mere presence" at the scene of the shooting and was therefore not a suspect of any criminal investigation. The State asserted that there was no reason to grant Bertram's request for a letter of immunity, and that Bertram had no right to invoke the Fifth Amendment. The trial court agreed and denied Bertram's request to invoke his Fifth Amendment right not to testify.

prosecutor had given him a copy of the transcript of his grand jury testimony to review before trial, but Bertram stated he had only "scanned through it a little bit," and did not have a chance to read it in any detail.

In an apparent attempt to refresh Bertram's recollection, the State showed Bertram an excerpt from his grand jury testimony. After reviewing the excerpt, Bertram acknowledged he had told the grand jury Appellant had gotten into the car with him and Posey after the shooting, and that Appellant had a gun with him at that time. However, Bertram subsequently made it clear he did not presently recall providing this testimony to the grand jury, once again claiming that he did not remember anything he had told the grand jury. Bertram was also shown the copy of Appellant's photograph he had signed during his appearance before the grand jury, identifying Appellant as the individual with the gun. Bertram acknowledged his signature appeared on the photograph, but claimed he had no recollection of signing it.

In a further attempt to refresh Bertram's recollection at trial, the State showed Bertram the security footage video of the incident. Based on his observation of the video, Bertram acknowledged that he was outside the bar in the immediate vicinity of the shooting when it occurred, but claimed that he did not see the shooting. Bertram further testified that he saw Appellant immediately after the shooting and observed that Appellant was holding a gun at that time. When he provided this testimony, it was not initially clear whether Bertram was testifying from his present recollection at that time, or whether he was testifying based on his review of the security footage. Any doubt that he was not testifying from his present recollection, however, was laid to rest when Bertram testified that he could not answer any of the prosecutor's follow-up questions regarding the events that occurred on the morning of the shooting, once again reverting

11

back to his claim that he had absolutely no independent recollection of what occurred that day.

Bertram, however, did acknowledge that he had had testified truthfully and accurately to the grand jury the year before regarding what had occurred on the morning of the shooting, and over Appellant's objection, the trial court allowed the State to read Bertram's grand jury testimony to the jury as a recorded recollection.

After reading the grand jury testimony, the State once again elicited testimony from Bertram verifying that his grand jury testimony was truthful and accurate. Appellant's attorney was then given the opportunity to cross-examine Bertram about his testimony.[6]

*Standard of Review*

We review a trial court's decision to admit evidence under an abuse of discretion standard and will not reverse that decision absent a clear abuse of discretion. *McCarty v. State,* 257 S.W.3d 238, 239 (Tex.Crim.App. 2008); *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App. 2002); *Salazar v. State,* 38 S.W.3d 141, 153–54 (Tex.Crim.App. 2001); *see also Whipple v. State,* 281 S.W.3d 482, 499-500 (Tex.App. – El Paso 2008, pet. ref'd). The trial court has the discretion whether to admit a witness's prior recorded recollection as an exception to the hearsay rule. *Smith v. State,* 420 S.W.3d 207, 216 (Tex.App. – Houston [1st Dist.] 2013, pet. ref'd) (finding that the trial court did not abuse its discretion in publishing witness's prior statement to the jury as a recorded recollection).

*The Evidence was not Admitted for Impeachment Purposes*

Appellant initially argues that Bertram's grand jury testimony did not qualify as an

---

[6] Appellant objected at trial that he was not able to properly cross-examine Bertram due to Bertram's memory loss, which Appellant claimed rendered Bertram unavailable for purposes of the Confrontation Clause, thereby violating Appellant's Sixth Amendment right to confront his witnesses. Although Appellant did not raise this issue on appeal, we note that memory loss does not render a witness "absent" for Confrontation Clause purposes when the witness is present in court and testifying. *See Woodall v. State,* 336 S.W.3d 634, 644 (Tex.Crim.App. 2011).

exception to the hearsay rule as a prior inconsistent statement to impeach Bertram's credibility under Rule 613(a) of the Texas Rules of Evidence. In particular, Appellant asserts the State did not properly establish that Bertram's grand jury testimony was inconsistent with his trial testimony. *See Lopez v. State,* 86 S.W.3d 228, 230 (Tex.Crim.App. 2002) (in order for hearsay evidence to "qualify for admission" as a prior inconsistent statement under Rule 613(a), the trial court must be persuaded that the witness's statements are indeed inconsistent). Appellant further contends that, even if the trial court properly admitted Bertram's grand jury testimony into evidence as a prior inconsistent statement, the trial court should have given a limiting instruction to the jury, directing it to consider the grand jury testimony only for the purpose of impeaching Bertram's credibility.

Although the trial court did not expressly state its basis for allowing the State to read Bertram's grand jury testimony at trial, our review of the record convinces us that the trial court did not admit Bertram's grand jury testimony as a prior inconsistent statement, and that it instead admitted the testimony as a recorded recollection pursuant to Rule 803(5) of the Texas Rules of Evidence. The record reflects that when the State first sought to introduce Bertram's grand jury testimony into evidence, Appellant argued that Bertram's grand jury testimony was not admissible as a prior inconsistent statement, but did so before the State had the opportunity to advise the trial court of the basis for seeking its admission.[7] The State thereafter clarified that it was seeking to

---

[7] Appellant also argued that the grand jury testimony was not admissible as a prior inconsistent statement, pointing to Rule 801(e)(1)(A)(ii) of the Texas Rules of Evidence, which provides that a declarant-witness's prior statement is not hearsay when offered in a criminal case, if it was given under penalty of perjury at a trial, hearing, or other proceeding, with the exception of a grand jury proceeding. TEX. R. EVID. 801(e)(1)(A)(ii). We note, however, that this rule does not preclude the admission of grand jury testimony, when the testimony is otherwise subject to a hearsay exception. *See e.g., Brown v. State,* 333 S.W.3d 606, 613 (Tex.App. – Dallas 2009, no pet.) (grand jury testimony was admissible as a recorded recollection under Rule 803(5)); *see also Walker v. State*, 473 S.W.2d 497, 499 (Tex.Crim.App. 1971) (grand jury testimony was not considered hearsay where it was properly used to refresh the witness's recollection).

13

admit the testimony under Rule 803(5) of the Texas Rules of Evidence. The State's attorney then read that rule in its entirety to the trial court, explaining that the rule allows a witness's prior recorded statement to be read into the record when a witness professes to no longer be able to recall the events that he recorded in his prior statement. The trial court thereafter asked defense counsel to specifically respond to the argument that Bertram's grand jury testimony was admissible under Rule 803(5). After rejecting counsel's argument that grand jury testimony could not be considered a recorded recollection for purposes of Rule 803(5), the trial court held that Bertram's grand jury testimony could be read into the record, utilizing the very method for admission set forth in that Rule.[8]

Accordingly, because the trial court clearly admitted the grand jury testimony under Rule 803(5) as a prior recorded recollection, we will not address Appellant's argument that the trial court erred in admitting the grand jury testimony as a prior inconsistent statement for impeachment purposes. Further, since the testimony was not admitted for the purpose of impeaching Bertram's credibility, there was no need for the trial court to give a limiting instruction to the jury to consider the evidence for impeachment purposes only. *See Brown*, 333 S.W.3d at 613-14 (trial court did not err in failing to instruct the jury to consider a witness's prior inconsistent statements for impeachment purposes only where the witness's prior statements were not offered for that purpose).

*The Evidence was Properly Admitted as a Recorded Recollection*

Appellant next contends Bertram's grand jury testimony was inadmissible as a recorded

---

[8] Although Appellant did not renew this argument on appeal, we note that the trial court properly concluded that grand jury testimony fits within the definition of a prior recorded recollection under Rule 803(5). *See, e.g., Brown,* 333 S.W.3d at 613 (grand jury testimony was properly read to the jury as a recorded recollection under Rule 803(5)).

14

recollection under Rule 803(5), claiming the State did not meet all of the prerequisites for admission under that Rule. Rule 803(5), as it existed at the time of Appellant's trial, provided that the following evidence was excepted from the hearsay rule, regardless of whether the declarant was available to testify at trial as a witness:

> **Recorded Recollection.** A memorandum or record concerning a matter about which a witness once had personal knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly, unless the circumstances of preparation cast doubt on the document's trustworthiness. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.[9]

The Texas Court of Criminal Appeals has held that before a recorded recollection is admissible as an exception to the hearsay rule under Rule 803(5), four elements must be present: (1) the witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the evidence, and (4) the witness must vouch for the accuracy of the written memorandum.[10] *See Johnson v. State*, 967 S.W.2d 410, 416 (Tex.Crim.App. 1998); *Woodall v. State*, No. 08-07-00015-CR, 2011 WL 6748490, at *2 (Tex.App. – El Paso Dec. 22, 2011, no pet.) (not designated for publication);

---

[9] We note that the Texas Rules of Evidence Rule were recently revised. *See* Tex. Sup. Ct. Misc. Dkt. No. 15–9048 (eff. April, 1, 2015). The revised Rule 803(5), which is substantially similar to the former rule, now provides:

"**Recorded Recollection.** A record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge, unless the circumstances of the record's preparation cast doubt on its trustworthiness. If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party." TEX. R. EVID. 803(5).

[10] Although the Court of Criminal Appeals adopted this analysis when the prior version of Rule 803(5) was in effect, its analysis is applicable to the current version of the Rule as well. The revisions to the Rules of Evidence, except for a few changes not relevant here, were simply "restyling changes … intended to be stylistic only." *See Tenet Hosp., Ltd. v. Garcia*, 462 S.W.3d 299, 305 n.3 (Tex.App. – El Paso 2015, no pet.) (quoting Tex. Sup. Ct. Misc. Dkt. No. 15–9048, at 1 (eff. April, 1, 2015)).

*Brown,* 333 S.W.3d at 612-13. When faced with a proper objection, the proponent of the hearsay evidence bears the burden to establish that the exception applies, and that it has met all prerequisites for the admission of the evidence. *See Taylor v. State,* 268 S.W.3d 571, 578–79 (Tex.Crim.App. 2008); *Vinson v. State,* 252 S.W.3d 336, 340 n.15 (Tex.Crim.App. 2008).

In the present case, Appellant does not deny that the first, second or fourth elements for the admission of Bertram's grand jury testimony were met; instead, Appellant attacks the admission of the testimony only on the third element, claiming that the State failed to demonstrate that Bertram lacked a present recollection of the events that occurred on the morning of the shooting. Appellant correctly points out that the third element for admission of a recorded recollection requires the witness to lack a present recollection of the events that he described in his prior recorded statement. Therefore, if the witness has a sufficient recollection of the events at trial, and the witness is able to testify at trial regarding his present recollection, the witness's prior recorded statements may not be introduced into evidence under Rule 803(5). *See, e.g., Johnson v. State,* 967 S.W.2d 410, 416 (Tex.Crim.App. 1998) (the predicate for admission of evidence as a prior recorded recollection requires that the witness have no present recollection of the events at issue); *see also Sashington v. State*, No. 03-11-00413-CR, 2014 WL 1018005, at *2 n.2 (Tex.App. – Austin March 14, 2014, pet. ref'd) (mem. op., not designated for publication) (where witness eventually regained her memory and testified as to her present recollection of the events at trial, her prior statement was not admissible at trial as a prior recorded recollection).

Appellant acknowledges that Bertram initially testified at trial that he did not remember "some things" regarding what occurred on the morning of the shooting. Appellant, however, claims that Bertram had a sufficient present recollection at trial on the key issue of identification.

16

In particular, Appellant asserts that Bertram "had already identified the appellant numerous times throughout his direct testimony" before the admission of his grand jury testimony. Appellant then reasons that because Bertram had "sufficient recollection" of this key fact, his grand jury testimony was not admissible as a recorded recollection. We disagree for two reasons.

First, as set forth above, Bertram repeatedly testified at trial that he had absolutely no present recollection of the events on the morning of the shooting, and in particular, he claimed that he did not recall seeing Appellant with a gun prior to the shooting; that he did not recall if Appellant had gotten into Posey's car with him after the shooting; and that he did not recall seeing Appellant with a gun after the shooting. Further, any identification of Appellant made by Bertram at trial appears to have been based almost exclusively on his review of his grand jury testimony and his review of the security footage of the incident, and his testimony did not appear to be based on his present recollection of the events. More importantly, immediately after Bertram provided his testimony identifying Appellant, he reverted back to testifying that he had absolutely no present recollection of the events that occurred the morning of the shooting. As such, the trial court could have reasonably concluded that Bertram had very little, if any, true present recollection of the events that occurred on the morning of the shooting.

Second, even if Bertram had a partial recollection of the events when he testified at trial, this would not preclude the trial court from allowing the State to read Bertram's grand jury testimony into the record. Both the current and the former versions of Rule 803(5) provide that a witness's prior recorded statement is admissible at trial when the witness is unable to testify "fully and accurately" about a matter that was once within his knowledge. TEX. R. EVID. 803(5). Although Bertram arguably displayed some present recollection of certain events the night of the

17

shooting, even after having his memory refreshed, he repeatedly denied having any present recollection of key events, such as whether he saw Appellant with a gun prior to the shooting and whether Appellant was in Posey's car with him as they fled the scene of the shooting, both key facts in the State's case.

Several of our sister courts addressing similar issues have concluded that a trial court may allow a party to read a witness's prior statement into evidence under Rule 803(5), when the witness has a partial memory of an event, but cannot remember all of the details in question, thereby rendering the witness unable to "fully and accurately" testify at trial. *See, e.g., Smith v. State,* 420 S.W.3d 207, 216 (Tex.App. – Houston [1st Dist.] 2013, pet. ref'd) (witness's prior recorded statement was properly played for the jury where the witness testified at trial that he could no longer remember the "details" of what occurred on the night of the victim's death because it had "been so long" since the shooting, even though witness stated that he could recall the "big things that happened"); *Spearman v. State,* 307 S.W.3d 463, 470 (Tex.App. – Beaumont 2010, pet. ref'd) (upholding the trial court's decision to allow prior recorded statement to be read into evidence, where trial court could have reasonably concluded that the witness, who had "some recollection" of the events in question, could not testify fully and accurately to all of the relevant details); *Brown,* 333 S.W.3d at 613 (where witness testified that he recalled some, but not all, of the details of an offense, the witness's grand jury testimony was admissible under Rule 803(5)).[11]

We conclude the trial court could have reasonably determined that, although Bertram may

[11] *See also Sanchez v. State,* No. 03-13-00050-CR, 2013 WL 4487562, at *8 (Tex.App. – Austin Aug. 15, 2013, pet. ref'd) (mem. op., not designated for publication) (trial court properly admitted witness's prior statement where the witness retained "substantial recollection of some of the pertinent events" on the night when the victim was assaulted, but repeatedly testified at trial that she could not recall significant details of what occurred due to the passage of time); *Hernandez v. State,* No. 03-07-00040-CR, 2010 WL 391850, at *13-14 (Tex.App. – Austin Feb. 5, 2010, no pet.) (mem. op., not designated for publication) (where witness lacked a "full recollection" of the events, and responded that she did "not remember" to several of the State's questions regarding the events, trial court did not err in admitting witness's prior videotaped statement).

18

have had some present recollection of what occurred the night of the shooting, he had no present recollection regarding various key details, and therefore could not testify "fully and accurately" at trial. Bertram's grand jury testimony supplied those key details, was given at or near the time of the events in question, and was, by Bertram's own admission, truthful and accurate. Accordingly, we conclude that the trial court properly allowed the State to read Bertram's grand jury testimony into the record as a recollection recorded under Rule 803(5). Appellant's second issue is therefore overruled.

## Whether the Prosecutor Made an Improper Jury Argument

In his third issue, Appellant contends the prosecutor made an improper statement to the jury in closing argument that improperly encouraged the jury to disregard the trial court's instruction on whether the jury could find him guilty of the lesser-included offense of manslaughter. We disagree.

### *Background*

At trial, Appellant requested and received a jury instruction, which allowed the jury to consider whether Appellant was guilty of the lesser-included offense of manslaughter if it found Appellant not guilty of murder. During his closing argument, the prosecutor went into an in-depth explanation of the distinctions between the elements required for a murder conviction and those required for a manslaughter conviction. The prosecutor then argued that the evidence presented at trial clearly demonstrated that Appellant acted with an intent to cause Banks' death or to cause serious bodily injury to Banks, by engaging in an act clearly dangerous to human life, which the prosecutor asserted would support a conviction for murder, rather than a conviction for manslaughter.

19

In their closing argument, Appellant's attorneys virtually ignored whether Appellant was guilty of manslaughter rather than murder, and instead argued almost exclusively that Appellant had been misidentified as the shooter. In particular, defense counsel pointed to the initial photo lineups in which the witnesses identified Charles Jones as the shooter, and then challenged the credibility of the witnesses' in-court identification of Appellant as the shooter.

In response to defense counsel's argument, the prosecutor first asserted that Appellant's identity had been firmly established at trial. The prosecutor then reiterated to the jury that its role was not only to identify Appellant as the shooter, but also to determine whether Appellant was guilty of murder as charged in the indictment, or the lesser-included offense of manslaughter. The prosecutor once again explained the distinction between the two offenses, specifically referring to the trial court's jury charge on that issue. The prosecutor also pointed out that the trial court's instructions required the jury to determine whether it believed, beyond a reasonable doubt, that Appellant was guilty of murder, and if not, to then consider whether Appellant was guilty of manslaughter. The prosecutor then made the following statement that is the subject of Appellant's complaint on appeal:

> And I will say this, and I find it very odd. It's not me. It's not me .... But if it's me, it was really only manslaughter. I was kidding. I'm reckless. Really? If it's not you, it's not you. Okay. I think, [f]orget manslaughter. Forget manslaughter. He's guilty of murder or he's not guilty.

Appellant did not object to the prosecutor's statements at trial. He now contends these statements were improper, as they allegedly encouraged the jury to disregard the trial court's instruction on whether Appellant could be found guilty of the lesser-included offense of manslaughter.[12]

---

[12] At least twice in his brief, Appellant also claims that the prosecutor improperly "struck appellant over the shoulders of counsel...." As the State points out, however, this term refers to situations in which an attorney has made a personal attack on opposing counsel during an argument. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.

The State counters that when the prosecutor's statements are read in context, it is clear that the prosecutor was not encouraging the jury to disregard the trial court's instructions on manslaughter and was instead simply responding to defense counsel's argument that Appellant had been misidentified as the shooter. According to the State, the prosecutor was simply pointing out the logical conclusion that if the jury did not believe Appellant was the shooter, it was required to acquit him; but if the jury believed Appellant was the shooter, then the evidence presented at trial supported a conviction for murder, not manslaughter. The State asserts that the prosecutor's isolated comment to "forget manslaughter," when read in this context, was simply a response to defense counsel's arguments regarding the identification issue, and was a proper comment on the state of the evidence. *See, e.g., Palacios v. State*, No. 14-99-00066-CR, 2000 WL 977380, at *3-4 (Tex.App. – Houston [14th Dist.] May 18, 2000, pet. ref'd) (not designated for publication) (prosecutor's comment that she did not believe the defendant's case was appropriate for probation was a proper comment on the evidence, and was not meant to encourage the jury to disregard the trial court's instruction that they should consider the full range of punishment available); *Cover v. State*, No. 01-97-00605-CR, 1999 WL 740667, at *4-5 (Tex.App. – Houston [1st Dist.] Sept. 23, 1999, pet. ref'd) (not designated for publication) (prosecutor's comments regarding Appellant's failure to establish the defense of "necessity" were not intended to encourage the jury to disregard the trial court's jury instruction on that issue, and were instead just in "answer to the argument of opposing counsel").

---

1998) (appellant argued that the "State improperly struck at appellant over the shoulder of counsel" by making an "improper attack on defense counsels' honesty"); *Brown v. State,* 270 S.W.3d 564, 572 (Tex.Crim.App. 2008) (a prosecutor's argument runs the risk of improperly "striking at a defendant over the shoulder of counsel" when it is directed at defense counsel personally and when it explicitly impugns defense counsel's character). Appellant has failed to point to anything in the record that constitutes a personal attack on defense counsel, and we therefore summarily reject this argument. *See* TEX. R. APP. P. 38.1(i) (party's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record).

*Appellant's Failure to Object*

We conclude that we need not resolve the question whether the prosecutor's jury argument was improper, because, as the State also points out, Appellant forfeited his right to raise this issue on appeal due to his failure to object to the argument at trial. In *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), the Texas Court of Criminal Appeals held that a "defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." Since *Cockrell* was decided, the Court has repeatedly reaffirmed its position on this issue in several cases, noting that its position in line with Texas Rule of Appellate Procedure 33.1, which provides that as a prerequisite for presenting a complaint for appellate review, the record must show that the appellant made a "timely request, objection, or motion" in the trial court. *See Mathis v. State,* 67 S.W.3d 918, 927 (Tex.Crim.App. 2002) (affirming *Cockrell* as being in line with Texas Rule of Appellate Procedure 33.1 and the policies "underlying preservation of error"); *see also Threadgill v. State,* 146 S.W.3d 654, 670 (Tex.Crim.App. 2004) (reaffirming that "*Cockrell* remains the law," and holding that the appellant had forfeited his right to complain about an allegedly improper jury argument due to his failure to lodge a timely objection at trial).

This Court has also had occasion to apply the ruling in *Cockrell,* and we have expressly held that an appellant forfeits his right to complain about a prosecutor's allegedly improper jury argument on appeal, even if the argument involves an error of "constitutional' dimension, absent a timely objection in the trial court. *See Medina v. State,* No. 08-06-00293-CR, 2008 WL 802996, at *2 (Tex.App. – El Paso March 27, 2008, no pet.) (not designated for publication); *see also Lopez v. State,* No. 08-01-00165-CR, 2002 WL 1732550, at *5 (Tex.App. – El Paso July 25, 2002, no

22

pet.) (not designated for publication) (appellant waived his right to complain about the prosecutor's allegedly improper jury argument due to his failure to lodge a contemporaneous objection to the argument).

Most recently, in *Grado v. State,* the Texas Court of Criminal Appeals once again recognized the "general requirement that a contemporaneous objection must be made to preserve error for appeal is firmly established in Rule of Appellate Procedure 33.1." 445 S.W.3d 736, 738-39 (Tex.Crim.App. 2014). However, the Court went on to point out that this "rule is not absolute," citing its previous holding in *Marin,* in which the Court held that the "general preservation requirement's application turns on the nature of the right allegedly infringed." *Id.* at 739 (citing *Marin v. State,* 851 S.W.2d 275 (Tex.Crim.App. 1993), *overruled on other grounds by, Cain v. State,* 947 S.W.2d 262 (Tex.Crim.App. 1997)).

The Court noted that in *Marin*, it separated defendants' rights into three categories: (1) fundamental errors, involving a defendant's "absolute rights," which cannot be forfeited by inaction; (2) other non-forfeitable rights that cannot be waived by inaction, but can be waived by an express and intentional waiver; and (3) rights that are "forfeitable," including some constitutional rights, which must be requested by the litigant. *Id.* at 739. The Court further explained that the rights that have typically found to be forfeitable have "by and large" been "evidentiary or procedurally based." *Id*. at 741. In a footnote, the Court cited examples of cases in which it has concluded that a right is forfeitable, including a citation to its prior holding in *Cockrell* in which it concluded that an appellant forfeits his right to complain about an improper jury argument when he fails to object to the argument at trial. *Id.* at 741 n.29.

23

In the present case, Appellant's complaint about the prosecutor's closing argument falls into the third category of forfeitable rights, as set forth in both *Grado* and *Marin*, and we therefore conclude that Appellant forfeited his right to complain on appeal about the prosecutor's closing argument.[13]   Accordingly, we overrule Appellant's third issue.

## CONCLUSION

The trial court's judgment is affirmed.

                                        STEVEN L. HUGHES, Justice

September 30, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Publish)

---

[13] Even if we were to review Appellant's claim for "fundamental error, we would not find that any such error existed in the prosecutor's jury argument.  In particular, when viewing the prosecutor's closing argument as a whole, we cannot conclude that the prosecutor's isolated statement to "forget manslaughter" was meant to encourage the jury to disregard the trial court's instructions on manslaughter, particularly in light of the fact that the prosecutor had previously gone into great detail explaining to the jury the circumstances under which it could find Appellant guilty of that lesser-included offense.  *See generally, Mosley v. State,* 686 S.W.2d 180, 183 (Tex.Crim.App. 1985) (when considering whether jury arguments were improper, the reviewing court must look to the statements in context, and not just to an isolated statement); *see also Caballero v. State,* 927 S.W.2d 128, 132 (Tex.App. – El Paso 1996, pet. ref'd) (jury argument must be analyzed in light of the entire argument made and not just isolated sentences).  Instead, the prosecutor appeared to be responding to Appellant's argument that he had been misidentified as the shooter, and was pointing out that if the jury believed Appellant's argument, it was required to acquit Appellant of both murder and manslaughter, which in fact was a correct statement of the law.  *See generally, Singleton v. State,* 479 S.W.2d 672, 674 (Tex.Crim.App. 1972) ("Error in argument does not lie in going beyond the court's charge, but lies in stating law contrary to the same.").