

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JASPER L. JAMES, | § | No. 08-25-00013-CR |
| Appellant, | § | Appeal from the |
| v. | § | 426th District Court |
| THE STATE OF TEXAS, | § | of Bell County, Texas |
| Appellee. | § | (TC# 22DCR87001) |
| | § | |
| | § | |

## MEMORANDUM OPINION

Appellant Jasper L. James appeals his conviction for murder, focusing solely on the trial judge's decision to impose a 75-year prison term. His sole issue on appeal claims that the trial judge improperly considered an exhibit identified as a "victim impact statement" before deciding punishment. For the reasons noted below, we affirm.

## I. BACKGROUND

Appellant was convicted of murdering his mother by stabbing her 51 times. Appellant does not contest the jury's finding of guilt, so we only summarily describe the facts that support that finding. Appellant, who was then 20 years old, lived with his mother, Jennifer James. When Jennifer did not report to work one day, her employer contacted a relative, who along with the

police, conducted a welfare check at the house. Appellant answered the door and declined to let the police enter, but did allow the relative access to areas in the home. The relative noticed, and reported to the officer, that a couch had been moved from the living room to the garage and it appeared to be stained with blood.

The police then conducted a search that found Jennifer's body in the crawl space under the house. The police then sought a warrant, and later searches turned up additional incriminating evidence, including a rug likely used to move the body, a mop used to clean up blood, a partially dug hole in the yard, Appellant's clothing soaked in Jennifer's blood, and a knife likely used for the stabbing found in a pair of Appellant's shorts. The coroner confirmed that Jennifer died from one or more of the 51 stab wounds to her body.

During the guilt-innocence phase of the trial, Appellant called no witnesses and his lawyer only briefly cross-examined a few of the State's witnesses. The jury quickly returned a finding of guilt. Appellant elected to have the trial judge assess punishment.

At a subsequent punishment hearing, the prosecutor moved to admit six additional photographs, State's exhibits 101 to 107; and it also offered, without a numerical identification, "the victim impact statement."[1] The trial court inquired whether James had any objections. Counsel responded, "No objection." The trial judge stated he had reviewed a pre-sentence report and he would consider "the victim impact statement" at "the appropriate time." The State called three witnesses, all family members, who urged the trial judge to assess a life sentence. Each recounted Appellant's statements that he could not wait for Jennifer to be gone because her

---

[1] Before the hearing ended and the parties rested, the trial court announced, as a housekeeping item, that it planned to renumber the previously admitted State's exhibits 101 to 107 as State's exhibits 217 through 223. Neither side objected. The exhibit identified as "the victim statement" that was offered by the State and admitted without objection was not mentioned at the time and it was not included in our record.

property would be his. Appellant called no witnesses, but he did ask the trial court to consider three sets of records he had admitted in the guilt innocence phase, which included school records from Belton ISD; medical records from Kerrville State Hospital; and county mental health and inmate records. After both sides rested, the trial court announced it would consider admitted documents during a brief recess and return for argument. When the sentencing trial resumed, defense counsel asked for a 20-year sentence, pointing out the event occurred two days shy of James's 20th birthday, and records established he had a medical history involving mental health and mental rehabilitation. The State countered by recommending a life sentence due to the violent nature of the offense, James's acting out in rage against a family member who provided him with love and support, and his failed attempt to conceal the crime by hiding evidence in the home. After the trial court announced it had considered all testimony and exhibits, it assessed a 75-year prison sentence.

In his sole issue on appeal, Appellant contends the trial court violated his constitutional right to an impartial judge. Specifically, he contends the court improperly considered a victim impact statement before announcing his sentence, characterizing the admitted statement as one covered by Article 42.03(b) of the Code of Criminal Procedure. Responding, the State argues the trial court did not err in considering a written victim impact statement. *See* Tex. Code Crim. Proc. Ann. art. 56A.157.

## II. STANDARD OF REVIEW

We review a trial court's evidentiary rulings under an abuse of discretion standard. *Jenkins v. State*, 493 S.W.3d 583, 607 (Tex. Crim. App. 2016). The trial court enjoys wide latitude in admitting relevant evidence so long as its admission is otherwise permitted by the rules of evidence. *Muhammad v. State*, 46 S.W.3d 493, 498–99 (Tex. App.—El Paso 2001, pet ref'd). The

trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

### III. CONTROLLING LAW

In the punishment phase of trial, the State and defendant may offer evidence the court "deems relevant to sentencing," including but not limited to prior criminal records, the defendant's general reputation and character, circumstances of the offense, and extraneous offenses. Tex. Code Crim. Proc. art. 37.07, §3(a). Aside from some express limitations on that kind of evidence as stated in Article 37.07, other code provisions address punishment evidence. Relevant here, the Texas Legislature empowers victims to express their views in criminal cases under two different provisions in the Code of Criminal Procedure.

First, Article 42.03(b) requires the trial court to "permit a victim, close relative of a deceased victim, or guardian of a victim, as defined by Article 56A.001, to appear in person to present to the court and to the defendant a statement of the person's views about the offense, the defendant, and the effect of the offense on the victim." Tex. Code Crim. Proc. Ann. art. 42.03(b). The provision contains several limitations—the victim, relative, or guardian "may not direct questions to the defendant", the court reporter may not transcribe the statement, and the "statement must be made . . . after sentence is pronounced." Tex. Code Crim. Proc. Ann. art. 42.03(b).

The legislature directed that these statements be made only after sentencing to alleviate any risk that the statements would affect the partiality of the court during the punishment phase of trial. *Johnson v. State*, 286 S.W.3d 346, 349 (Tex. Crim. App. 2009); *see also Gifford v. State*, 980 S.W.2d 791, 792–93 (Tex. App.-—Houston [14th Dist.] 1998, pet. ref'd) (holding that the trial court should not have allowed the complainant's father to make a statement to the court regarding

4

the father's views of the offense and the proper punishment before punishment was assessed). Case law often refers to these statements as "allocution" statements. *See Johnson*, 286 S.W.3d at 349 ("It is widely acknowledged by commentators that victim-allocution statements are to have 'no effect' upon the jury or judge's decision making."); *Garcia v. State*, 16 S.W.3d 401, 408 (Tex. App.—El Paso 2000, pet. ref'd) (citing Keith D. Nicholson, *Would You Like More Salt With That Wound? Post–Sentence Victim Allocation in Texas,* 26 St. Mary's L.J. 1103, 1114–15 (1995)).

Yet, contrasted with that provision, Chapter 56A of the Code—titled "Rights of Crime Victims"—grants a victim, guardian of a victim, or close relative of a deceased victim, several rights, including:

> (5)  the right to provide pertinent information to a community supervision and corrections department conducting a presentencing investigation concerning the impact of the offense on the victim and the victim's family by testimony, written statement, or any other manner before any sentencing of the defendant;

.    .    .

> (12) the right to be informed, in the manner provided by Article 56A.0525, of the uses of a victim impact statement and the statement's purpose in the criminal justice system as described by Subchapter D, *to complete the victim impact statement, and to have the victim impact statement considered*:

>> (A) by the attorney representing the state *and the judge before sentencing* or before a plea bargain agreement is accepted;

Tex. Code Crim. Proc. Ann. art. 56A.051 (emphasis added).

Subchapter D, titled "Victim Impact Statement" contains detailed provisions on such statements, including their form, and relevant here, when the trial court might view them. Under Article 56A.156, the trial court "may not inspect a victim impact statement until after a finding of guilt" *Id.* art. 56A.156. But the trial court *must* consider the statement before imposing the sentence:

5

(a) *Before imposing a sentence*, a court shall, as applicable, inquire as to whether a victim impact statement has been returned to the attorney representing the state and, if a statement has been returned to the attorney, consider the information provided in the statement.

(b) On inquiry by the sentencing court, the attorney representing the state shall make a copy of the statement available for consideration by the court.

Tex. Code Crim. Proc. Ann. art. 56A.157 (emphasis added). The defendant is accorded a reasonable time period to read the victim impact statement, respond to it, and "with the approval of the court, introduce testimony or other information alleging a factual inaccuracy in the statement." *Id*. art. 56A.158 (1),(2),(3).

## IV. APPLICATION

Appellant's argument is built on three pillars. First, he assumes the victim impact statement was the statement contemplated by Article 42.03(b), and could only be considered by the trial judge after he assessed a sentence. Second, Appellant contends the trial judge's error in considering the statement when he did falls into that category of errors which question the impartiality of the trial judge (and hence no trial objection is required). Finally, Appellant contends this error is structural, making it immune from a harm analysis.

The State takes issue with each of these arguments, but its attack on the first two premises provides the decision point for the appeal. The State responds that the victim impact statement here was an Article 56A.157 statement that *must* be considered by the trial court (and not an Article 42.03(b) statement).[2] If anything, the record better supports the State's position, but any ambiguity in the nature of the victim impact statement proves fatal to Appellant's claim that he did not need to object to preserve error.

---

[2] Appellant did not file a reply brief and consequently does not respond to this argument.

"Preservation of error is a systemic requirement on appeal." *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Reviewing courts should not address the merits of an issue if the issue is not preserved. *Id.* at 532–33. To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. *Priester v. State*, 478 S.W.3d 826, 840 (Tex. App.—El Paso 2015, no pet.) (citing Tex. R. App. P. 33.1(a)(1)).

Appellant did not object to the admission of the victim impact statement, nor did he object when the trial judge stated that he reviewed the statement before assessing the sentence. Appellant candidly concedes that prior cases hold the failure to lodge an objection in this context for non-constitutional error waives any complaint on appeal. *See* e.g. *Aldrich v. State*, 296 S.W.3d 225, 259 (Tex. App.—Fort Worth 2009, pet. ref'd). To skirt this problem, Appellant pitches the trial court's error as one of constitutional dimension, likening it to the kind of error presented in *Proenza v. State*, 541 S.W.3d 786, 798 (Tex. Crim. App. 2017).

Factually, the trial judge in *Proenza* took over the questioning of an expert witness and through the questioning, arguably indicated the judge's views on the merits the defense case. *Id.* at 789–90. The defendant did not object at trial, but raised the issue on appeal. The *Proenza* Court analyzed preservation under the three-tier system developed in *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993) (en banc), *overruled on other grounds*, *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (en banc). *Marin* identifies three types of rules: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. *Id.* at 279–80. Of these three categories, only the first two categories—absolute requirements and prohibitions, and violations of rights that are waivable only—enable the appellate court to hear a

complaint without a proper trial objection. *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003).

Applying that framework, the *Proenza* court decided that a trial judge's comments which raised a question of partiality were at least category two *Marin* rights that could be forfeited only through an express waiver. 541 S.W.3d at 797. It reached this conclusion based on the nature of the right infringed upon: a statute that imposed an affirmative obligation on a judge independent of a litigant's duty to request relief. *Id.* at 796. It also termed the violation of the right as one which may call into question the impartiality of the trial judge. *Id.* at 799. State otherwise, the judge's error in *Proenza* was "a category of error [which] by its very utterance tends to threaten the integrity of the criminal adjudicatory process itself" so that the Court "may, consistent with *Marin*, deem it proper for appellate courts to at least consider the merits of these claims—even in the absence of a trial-level objection—and take corrective measures as appropriate." *Id.* at 798.

Appellant cites no authority for his claim that the right under Article 42.03(b) falls into the *Marin* category one or two rights. We conclude that the right under the facts presented here was a *Marin* category three right which must be asserted on the record. To begin, it differs by degree from the statutory rights previously found to fall into *Marin* category two rights. *See Proenza*, 541 S.W.3d at 798 (trial judge acting as an advocate in questioning witness); *Grado v. State*, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014) (finding fundamental error when the sentencing judge did not know the correct range of punishment because such knowledge implicates "the integrity of judicial sentencing proceedings."); *Garcia v. State*, 149 S.W.3d 135, 146 (Tex. Crim. App. 2004) (holding that the right to an interpreter is non-forfeitable if the judge knows of the defendant's language barrier because the defendant "deserved more than to sit in total incomprehension as the trial proceeded"). And more recently, the Court held that the defendant's right to attend the

punishment phase of trial was a waivable-only right based on the text of several statutes and a long history of that right's importance. *Tates v. State*, No. PD-0486-23, 2025 WL 1812826, at *5 (Tex. Crim. App. July 2, 2025).

Notably, there are two statutes dealing with victim input, only one of which requires that a sentence be assessed before the statement is heard. Tex. Code Crim. Proc. Ann. art. 42.03(b). The other statute specifically requires that the trial judge consider the victim impact statement. Tex. Code Crim. Proc. Ann. art. 56A.051(12) and 56A.156. And if anything, the record here better supports the view this was an Article 56A.157 victim impact statement.[3] But when there is any ambiguity, we hold that a defendant who contends that a victim impact statement is actually an allocution statement under Article 42.03(b) must make that position known to the trial judge and comply with Rule 33.1 preservation requirements. A trial court has one of two paths to follow based on which kind of statement is before it. The substance of what may be contained in these statements might well overlap. A trial judge deserves fair warning if party claims the statement falls under one Code provision verse another, as those Code provisions contain conflicting affirmative duties on when the statement might be considered. Imposing a duty on counsel to object is neither burdensome, nor futile.

---

[3] First, it is referred to as a "victim impact statement" as does Article 56A and not an allocution statement as Article 42.03(b) statements are often termed. *Cf.* Tex. Code Crim. Proc. Ann. arts 56A.151, 56A.155, 56A.156, 56A.157 (all using term "victim impact statement") and art, 42.03(b) (referring to "statement of the person's views). Second, Article 42.03(b) statements are testimonial, while Article 56A.157 are written statements. The statement here was offered as a written exhibit. Third, under Article 56A, a prosecutor has a duty to inform victims of their rights, including the right to make a statement. Tex. Code Crim. Proc. Ann. art. 56A.051(12)(A). The judgment of conviction form has a section where the Judge checks whether a victim impact statement was received by the prosecutor. The judgment of conviction here affirmatively states that a victim impact statement was returned to the State's attorney in this case, which shows an Article 56A victim impact statement exists. This view also better fits the presumption of regularity which requires "a reviewing court, absent evidence of impropriety, to indulge every presumption in favor of the regularity of the proceedings and documents in the lower court." *Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000).

Because no objection was lodged to the trial judge's admission and consideration of the victim impact statement, we conclude Appellant's sole issue is forfeited.

## V. CONCLUSION

We overrule Appellant's sole issue and affirm the judgment of conviction below.

GINA M. PALAFOX, Justice

August 28, 2025

Before Palafox and Soto, JJ., and Rodriguez, C.J. (Senior Judge)
Rodriguez, C.J. (Senior Judge) sitting by assignment

(Do Not Publish)